[1] Respondents (plaintiffs) brought this suit November 26, 1947, against appellants (defendants) in the Magistrate's Court to recover possession of certain premises, plus double rent for one month's holding over, and for damages by reason of such holding over.
[2] From the judgment in that court in favor of the plaintiffs in the sum of $40 and costs, plaintiffs appealed to the Circuit Court where, in a trial without a jury, judgment was rendered for the plaintiffs for possession and $80 for rent and $117.65 damages. The defendants have appealed from that judgment.
[3] The premises in question were a first floor apartment in Macon, Missouri, belonging to the plaintiffs, husband and wife, in the estate by the entirety. On May 1, 1945, a written lease of the said apartment was made, purporting to be between B. R. Williams, party of the first part, and Mrs. Ray Carey, "wife of Major Carey, now in the armed forces," party of the second part.
[4] In their statement filed in the Magistrate's Court, plaintiffs alleged that they leased said apartment April 1, 1945, to the defendants for a term of six months, and thereafter from month to month, subject to a thirty day notice to vacate the premises; that such notice was served on defendants to vacate the premises before September 1, 1947; that the tenancy expired on September 1, 1947, and that since that date plaintiffs have been and are entitled to possession; that defendants, willfully and unlawfully, held over until October 5, 1947; that the rental value was $60 per month which, when doubled according to statute, would be $120 per month, and that damages had been incurred in the sum of $278.11, for which, with possession, they prayed judgment.
[5] The lease read, in part:
[6] "It is further understood that this lease is to be from the first day of April and *Page 158 
rent begins the first day of April and is to continue from month to month, with payment of rent in advance, for at least six (6) months and longer, from month to month, if desirable and satisfactory to both parties. Rights and privileges will remain the same for as long as tenant desires to stay, if satisfactory to both parties.
* * * * * *
[7] "It is further understood by both parties that should tenant desire to vacate, she is to give party of the first part at least thirty (30) days notice of her intention to move, if possible. And if party of the first part desires to have occupancy at any time after six (6) months, he is to give tenant at least (30) days notice. These arrangements and this lease is good for as long as tenant desires to stay".
[8] The above lease was prepared by plaintiff B. R. Williams, a lawyer, and signed by him as party of the first part, and thereafter signed by defendant Mary Rowe Carey, whose husband at the time was serving in the armed forces of the United States, somewhere in England, and who was not discharged until in October, 1945. Once while on furlough, defendant Ray Carey stayed in the apartment with his wife, and after his final release from the armed services he moved in and occupied the premises with his wife until they moved therefrom on September 29, 1947. In the meantime, Mrs. Carey sometimes paid the monthly rent, and sometimes Mr. Carey paid it, sometimes her check was used and sometimes his. The defendants had a copy of the lease in their bank, which copy was available to them at all times.
[9] After several conversations between plaintiff B. R. Williams and defendant Ray Carey regarding the former's desire to increase the rent, which Mr. Carey repeatedly said would be more than he could afford, the plaintiffs served on the defendants a notice addressed to Ray Carey, dated August 1, 1947, and signed by the plaintiffs, as follows: "You are hereby notified for peaceful possession with kindness and good feeling for the downstairs apartment that you occupy, 1029 N. Jackson Street, Lot 4, Block 142, Gilstrap Addition, Macon, Missouri, by the first of September, 1947, as we are planning some changes and we hope it will not be of great inconvenience to you and your family". Mr. Williams testified that thereafter he talked several times with Mr. Carey and suggested that if defendants would pay $20 additional for the rent that they could stay, but that Mr. Carey replied that he intended to get out if he had to move into the street, and that if he could find a place by September 1st, he would be out by that date. The defendants denied any definite promise to vacate on that date.
[10] In the meantime, one John D. Schofield had obtained employment in the schools in Macon, Missouri, and desired to move there from Marceline, and contacted Mr. Williams regarding the apartment in question. There was evidence pro and con regarding the conversations between the defendants and Mr. Schofield as to whether or not the defendants agreed to vacate and on what date, and as to what the defendants said to Mr. Williams on that subject, but during the month of August, 1947, plaintiffs made a lease with Mr. Schofield for the apartment, beginning September 1, 1947, and Schofield paid the first month's rent of $60 to the plaintiffs. As it became apparent that the defendants were not planning to vacate on September 1, 1947, the plaintiff B. R. Williams then on August 30, 1947, addressed a letter to Ray Carey, signed by both plaintiffs as follows: "You are hereby notified for peacable possession of the down stairs apartment you now occupy, and belonging to me, located at 1029 North Jackson Street, Lot Four (4), Block One Hundred Forty-two (142), Gilstrap Addition, Macon, Missouri, on or before September 30th, 1947". This notice was served on August 30, 1947, on Mrs. Carey, and shown by her to Mr. Carey.
[11] On the same date, to-wit, August 30, 1947, there was likewise served on the defendants a notice bearing that date, addressed to Ray Carey and signed by both plaintiffs, as follows: "You are hereby notified that on the downstairs apartment you now occupy and belonging to me, located at 1029 North Jackson Street, Lot 4, Block 142, Gilstrap Addition, Macon, Missouri, that the days that you stay during the month of September, the rent will be increased *Page 159 
on said property at the rate of ($60) Sixty dollars per month instead of ($40) Forty dollars that you have been paying and that this increase and the original rent for said days will be due and payable to John D. Schofield, lessee".
[12] Witness Schofield testified that his furniture had been moved after Labor Day to the apartment and since he was unable to get possession, it was necessary for him to move the furniture to the basement of one of the schools from which he later had to move it to the apartment when he did obtain possession thereof October 1, 1947, and that the cost of the last move of the furniture was $16.74. He testified that this outlay was later reimbursed to him by the plaintiffs and that the $60 he paid for September, 1947, rent was later settled by the plaintiffs in May, 1948.
[13] Several times before this suit was brought, November 26, 1947, the defendants tendered to the plaintiffs a check for $40 for the September, 1947, rent, and before and during the trial the tender was renewed in cash. The tender was at all times declined by the plaintiffs.
[14] Among the various points made here by the appellants is that this action for unlawful detainer cannot be maintained under the evidence because at the time it was instituted the defendants were not in possession of the premises. If the action cannot be maintained, we deem it unnecessary to consider the appellants' other points. It appears from the evidence that pending the period of the notice to vacate dated August 1, 1947, plaintiffs served on defendants a new notice on August 30, 1947, to vacate on September 30, 1947, and also a notice that the rental rate for September, 1947, would be increased from $40 to $60 a month. The effect, under the Missouri law, of such a second notice to vacate pending a former one on which action had not yet been brought, has been well considered and construed in Mississippi Glass Co. v. Poland, 8 Cir., 134 F.2d 169, 170, where it is held that the first notice is thereby waived: "The landlord can not unilaterally extend and continue the application of the notice, where he has otherwise legally precluded himself from enforcing it." See, also, 51 C.J.S., Landlord and Tenant, § 150(g), pages 760, 761. Thus, only the plaintiffs' second notice remained effective, requiring defendants to vacate on September 30, 1947, with which defendants complied by vacating September 29, 1947. Flanagan v. Lazerine, 175 Mo.App. 188, 157 S.W. 824.
[15] It is true plaintiffs attempted by a separate notice of August 30, 1947, to increase the rental rate beginning September 1, 1947, from $40 to $60 a month, but there was nothing in the lease, which was still in effect, to authorize such increase thereunder without the consent of the tenant and it was herefore ineffective.
[16] Thus it appears that up to the date the defendants vacated the premises they were occupying the same as lawful tenants and were not at any time occupying the same unlawfully or withholding them. When, then, the plaintiffs, on November 26, 1947, brought this suit, concededly an action of unlawful detainer and for damages thereunder, the possession of the premises had been physically surrendered to the plaintiffs on the previous September 29, and so remained.
[17] In Loan v. Smith et al., 76 Mo.App. 510, the defendant vacated the premises January 11th, and the unlawful detainer action was brought the following February 4th when, it was conceded, defendant was not in possession of the premises. We said in that case, 76 Mo.App. at page 511: "But in our opinion the action was misconceived. If Smith is liable to plaintiff for rent, the suit should be an action for rent. In order to maintain an action of unlawful detainer the party defendant must be unlawfully detaining the premises at the time the action is brought. (Citing cases.) He must be in possession of the premises at that time."
[18] In the case at bar, not only were the defendants not in possession when this action for unlawful detainer was brought and had not been for nearly two months, but at no time were they guilty of unlawfully holding over. These are essential elements to lay the ground for the penalties and damages of an action of unlawful *Page 160 
detainer. Hence the action cannot be maintained. The judgment is reversed and the cause remanded with directions to the trial court to enter judgment for the defendants.
[19] All concur.